IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN DARYL RICE, <br> TDCJ #1392550, <br><br> Petitioner, <br><br> v. <br><br> RICK THALER, Director, <br> Texas Department of Criminal Justice - <br> Correctional Institutions Division, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-11-1132 |

## MEMORANDUM AND ORDER

The petitioner, Kevin Daryl Rice (TDCJ #1392550, former TDCJ #1141187, former TDCJ #700015), is a state inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division (collectively, "TDCJ"). Rice has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, along with a supporting memorandum, to challenge a prison disciplinary conviction. The respondent has answered with a motion for summary judgment, arguing that Rice is not entitled to relief. (Docket No. 12). Rice has filed a response. (Docket No. 19). After reviewing all of the pleadings, the administrative records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

### I.      BACKGROUND

Rice is presently serving a 25-year prison sentence that he received in Dallas County, Texas, on August 31, 2006, as the result of his conviction for felony theft. That

conviction was affirmed on direct appeal in an unpublished opinion. *See Rice v. State*, No. 05-06-01399-CR, 2007 WL 882716 (Tex. App. ─ Dallas 2007, pet. dism'd). Rice does not challenge his underlying conviction here. Instead, he contests the result of a prison disciplinary proceeding lodged against him at the Byrd Unit in Huntsville.

The respondent has provided the report and record of the administrative investigation, which includes an audio CD of the disciplinary hearing. (Docket Nos. 13-14). Those records show that, on November 12, 2010, Rice received notice that he was being charged with violating prison rules in disciplinary case #20110073898 by being "out of place " without authorization. Being out of place is described as a Level 2, Code 27.0 violation of the TDCJ-CID Disciplinary Rules and Procedures for Offenders. According to these rules, an offender is considered to be out of place for purposes of Code 27.0 if he (a) is found "[i]n any unauthorized area (e.g., a cell or wing to which one is not assigned);" or (b) he fails "to be at a designated area at a specified time (e.g., has a lay-in for a medical appointment, but goes to the library instead)." In this case, the charging officer (Assistant Warden C. Cook) alleged that Rice committed the offense on November 9, 2010, by "standing in front of C9-24 cell when in fact said offender had no authorization to be in such place."

At a hearing held on November 16, 2010, the disciplinary hearing officer (Captain Lightsey) reviewed a written statement as well as testimony from Warden Cook along with the report prepared during the administrative investigation. Warden Cook testified that he saw Rice and another inmate "loitering" on the "run" or row in front of cell C9-24,

which was not assigned to him.  When Warden Cook asked Rice who authorized him to be in that area, Rice reportedly replied that he did not have any permission.  Rice testified in his own defense that he was only trying to see what time it was.  Rice explained that he had been sitting in "day room" or designated "TV area," and that "Officer Smith" had given him permission to stand up and check the time.  Rice presented a written statement from Officer Smith, who affirmed that she told Rice that he "could look to see what time it was" and then left the row.  Rice explained that he went to see what time it was by looking at a clock that was inside of cell C9-24.  Rice argued, therefore, that he was not out of place without authorization.

Based on the charging officer's report and testimony, the disciplinary captain found Rice guilty as charged.  As a result of the disciplinary conviction, Rice lost his commissary privileges for 30 days.  In addition, Rice forfeited 10 days of previously earned credit for good conduct (*i.e.*, "good-time credit") and he was reduced in classification status from L1 to L2.  Rice filed grievances to challenge the adequacy of the notice that he had regarding whether the charged conduct was wrong and he argued that the evidence was insufficient to support his conviction, but his appeal was unsuccessful.

Rice now seeks a federal writ of habeas corpus to challenge his disciplinary conviction.  Rice complains that the disciplinary conviction violated his right to due process because: (1) he did not receive "fair notice" (prior to receiving the disciplinary case) of what kind of conduct constitutes being of out of place; (2) he was not able to call

Officer Smith as a witness at the hearing; (3) the evidence was insufficient to support his conviction; and (4) another offender who was charged with being out of place received a lighter penalty for being out of place, which violates Rice's right to equal protection. The respondent notes that the grievances filed Rice reference only his claims concerning notice and sufficiency of the evidence (claims 1 and 3). The respondent maintains, therefore, that Rice did not exhaust available administrative remedies by raising all of his claims during the appeal process. The respondent argues further that Rice is not entitled to relief because his claims are without merit. The parties' contentions are discussed below under the standard of review that governs habeas review of prison disciplinary proceedings.

## II. DISCUSSION

### A. Exhaustion of State Administrative Remedies

In the pending motion for summary judgment, the respondent contends that the Rice did not exhaust available state remedies by presenting all of his grounds for relief during the prison grievance process. The respondent has provided copies of the relevant step 1 and step 2 grievances submitted by Rice to challenge the result of his disciplinary conviction. The grievances reflect that Rice complained only that he lacked notice that his conduct was wrong and that the evidence was insufficient to warrant punishment for being out of place (claims 1 and 3), but raised none of his other claims concerning Officer Smith's testimony or the punishment meted out to a different offender (claims 2

4

and 4). The respondent argues, therefore, that Rice failed to exhaust available remedies prior to seeking federal habeas corpus review of these issues.

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Moore v. Quarterman*, 454 F.3d 484, 490-91 (5th Cir. 2006) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations and quotations omitted)). Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1)(B).

Texas prisoners are not required to present claims concerning disciplinary convictions to the state courts in a state habeas corpus application, because those claims are not cognizable on state habeas review. *See Ex parte Brager*, 704 S.W.2d 46, 46 (Tex. Crim. App. 1986). Instead, Texas prisoners who challenge the result of a disciplinary

conviction must seek relief through the two-step TDCJ grievance process.[1] *Id.* In that regard, § 501.008 of the Texas Government Code requires inmates to fully exhaust the TDCJ administrative grievance process before resorting to court. If an inmate fails to do so, his claims may be dismissed for failure to exhaust administrative remedies. *See Ex Parte Stokes*, 15 S.W.3d 532, 533 (Tex. Crim. App. 2000).

Courts in this circuit have recognized that exhaustion of the administrative grievance process is required in the prison disciplinary conviction context. *See, e.g., Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002) (holding that "the timely pendency of prison grievance procedures" tolls the statute of limitations for habeas corpus petitions found in 28 U.S.C. § 2244(d) because prisoners are required to pursue administrative remedies); *Foley v. Cockrell*, 222 F. Supp. 2d 826, 829 (N.D. Tex. 2002) (holding that, "[b]ecause exhaustion of administrative grievance procedures is required, Petitioner is entitled to equitable tolling of the statute of limitations until the date that he completed the TDCJ administrative review process"). Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. *See Prieser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and

---

[1] TDCJ currently provides a two-step procedure for presenting administrative grievances. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). In Step 1, the prisoner submits a grievance at the institutional level. *Id.* If the decision at Step 1 is unfavorable, Step 2 permits the prisoner to appeal "to the division grievance investigation with the . . . Texas Department of Criminal Justice." *Id.*

noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems").

The record confirms that Rice did not present all of his grounds for relief in both step 1 and step 2 of the prison grievance process, where he complained primarily about lack of notice and the sufficiency of the evidence against him. A prisoner must complete both steps of the grievance process to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Because Rice did not complete both step 1 and step 2 of the grievance process with respect to the other claims in his pending petition, he failed to fully exhaust the prison grievance process with respect to those allegations. In his response to the summary judgment motion, Rice concedes that he did not exhaust available administrative remedies with respect to claims 2 and 4. (Docket No. 19, at 9-10). He offers no persuasive explanation for his failure to present all of his claims properly during the grievance process. It follows that, with the exception of Rice's challenge to the adequacy of the notice that he was afforded prior to being charged and the sufficiency of the evidence (claims 1 and 3), his other claims (claims 2 and 4) are subject to dismissal for lack of exhaustion. The respondent argues further that Rice fails to establish a constitutional violation and that his petition fails for other reasons outlined briefly below.

**B.     Due Process and the Prison Disciplinary Hearing**

Rice seeks a writ of habeas corpus to challenge the result of a prison disciplinary conviction that resulted in loss of privileges, a reduction in classification status, and the loss of good-time credit. The federal writ of habeas corpus is an extraordinary remedy which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) & 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). To prevail, a habeas corpus petitioner must establish a constitutional violation.

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause *only* when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). A convicted prisoner does not have a constitutional right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Likewise, the Constitution does not guarantee an inmate

good-time credit for satisfactory behavior while in prison. *Wolff*, 418 U.S. at 557; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Absent a showing that his disciplinary conviction has implicated a constitutionally protected interest, a prisoner's due process claim depends on the existence of an interest created by state law.

The Supreme Court has decided that only those state-created substantive interests which "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487. It is well established that sanctions resulting in a loss of privileges, a temporary cell restriction, and a reduction in classification do not warrant such protection.[2] By contrast, when a state creates a right to time credit for good conduct, and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison*, 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557).

---

[2]  According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See id*. The Fifth Circuit has also decided that reductions in a prisoner's class status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

The Fifth Circuit has recognized that Texas inmates who are eligible for the form of parole known as mandatory supervision have a constitutional expectancy of early release.[3] *See Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) (addressing the mandatory supervision scheme in place prior to September 1, 1996); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007) (addressing the mandatory supervision scheme in place before and after September 1, 1996). Texas inmates who are eligible for mandatory supervision have a protected liberty interest in the good-time credits that they have earned. *See Malchi*, 211 F.3d at 956. Therefore, when sanctions are imposed for disciplinary violations, Texas prison officials cannot forfeit good-time credits from inmates who are eligible for mandatory supervision without first affording due process. *See id.*

As a result of the disciplinary conviction at issue, Rice forfeited 10 days of previously earned good-time credit. Rice is eligible for mandatory supervision. To the extent that Rice had a liberty interest in good-time credit accrued toward his potential early release on mandatory supervision, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *See*

---

[3]   There are two ways in which a state prisoner becomes eligible for early release from confinement in Texas. The first is by "parole" and the second is by release on "mandatory supervision." *See* TEX. GOV'T CODE § 508.001(5)-(6) (Vernon 2004). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007).

*Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court considered the minimum level of due process required in the prison disciplinary context. In doing so, the Supreme Court recognized that prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Id.* at 561. Because prison disciplinary hearings are "not part of a criminal prosecution," the Court reasoned that "the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). The minimum amount of procedural due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *See Wolff*, 418 U.S. at 563-67.

Rice does not dispute that he received sufficient notice of the charges that were lodged against him by Warden Cook. (Docket No. 19, at 12). Likewise, he does not claim that he was denied a written statement of the reason for his conviction. (*Id.*). Although Rice claims that he was denied the right to call Officer Smith as a witness, the audio CD of the hearing shows that Rice did not request live testimony from her as a

witness, electing instead to introduce Officer Smith's written statement into the record. (Docket No. 14, Audio CD). Rice does not provide any information about what Officer Smith would have testified about if she had been called as a witness at the hearing. Because Officer Smith's written statement was read into the record, Rice does not demonstrate that he had an inadequate opportunity to present evidence. Thus, Rice does not establish that he was denied the minimum level of due process outlined in *Wolff*. As discussed in more detail below, Rice complains that he was denied procedural due process because (1) he was not afforded fair notice that his conduct was prohibited before punishment was imposed, and (2) his conviction was not supported by sufficient evidence.

### 1. Fair Notice of Prohibited Conduct

Rice argues at length that he was convicted in violation of his right to due process because he did not have fair notice that his conduct was prohibited by the prison disciplinary rules. Rice correctly notes that it is a violation of due process to punish inmates for conduct that they could not have known were prohibited. *See Reeves v. Pettcox*, 19 F.3d 1060, 1061 (5th Cir. 1994) (per curiam). Rice fails to show that he lacked adequate notice here.

Rice acknowledges that the Code 27.0 of the TDCJ Disciplinary Rules and Procedures for Offenders prohibit inmates from being out of place. In this instance, Rice was accused of being out of place because he was found in front of a cell that did not belong to him and he had no authorization to be there. As outlined above, Code 27.0 of

the TDCJ Disciplinary Rules and Procedures for Offenders, which is provided to all offenders and is posted at every TDCJ facility, states that an offender is considered to be out of place if he is found "[i]n any unauthorized area (e.g., a cell or wing to which one is not assigned)." Rice does not argue that he was unaware of the TDCJ Disciplinary Rules and Procedures for Offenders and he does not allege or show that the rule is unconstitutionally vague. *See Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984). Rice argues that "unauthorized area" can only mean an area that is restricted from access by any inmate. Code 27.0 clearly states, however, that an unauthorized area can include "a cell or wing to which one is not assigned[.]" Because Rice could have understood that his conduct was prohibited under the terms of the disciplinary rule at issue, he does not demonstrate that he was denied fair notice in violation of his right to due process. Rice is not entitled to relief on this issue.

### 2. Sufficiency of the Evidence

Rice also claims that his disciplinary conviction violates due process, nevertheless, because the charges were not supported by sufficient evidence. In addition to the procedural safeguards articulated in *Wolff*, disciplinary sanctions imposed by prison officials must be supported by "some evidence" to be consistent with due process. *See Hill*, 472 U.S. at 457; *Broussard v. Johnson*, 253 F.3d 874, 876-77 (5th Cir. 2001). It is well settled, however, that "federal courts cannot retry every prison disciplinary dispute; rather the court may act only where arbitrary or capricious action is shown." *Reeves*, 19 F.3d at 1062. In other words, when reviewing a prison disciplinary decision, "the

standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith v. Rabalais*, 659 F.2d 539, 543 (5th Cir. Unit A 1981); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995); *Turner v. Johnson*, 46 F. Supp. 2d 655, 660 (S.D. Tex. 1999). To satisfy the Due Process Clause in the context of prison disciplinary proceedings "requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. "The goal of this standard — variously a 'modicum of evidence,' 'any evidence,' or 'some evidence' — is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001) (citing *Hill*, 472 U.S. at 455). Thus, federal habeas corpus courts "do not assess the weight of the evidence" when reviewing prison disciplinary proceedings, and need only examine whether the guilty finding has the "support of 'some facts' or 'any evidence at all.'" *Hudson*, 242 F.3d at 537.

As noted above, Rice was charged with violating prison rules by being out of place, which is a Level 2, Code 27.0 violation of the TDCJ-CID Disciplinary Rules and Procedures for Offenders. According to the charging officer's written report and testimony, Rice and another inmate were loitering in front cell C9-24 without authorization. The charging officer testified that, when he approached Rice, he specifically asked who had given him authorization to stand in front of cell C9-24. (Docket No. 14, Audio CD). The charging officer testified that Rice admitted that he did

not have permission to be there because he did not think he needed to ask. (*Id.*). A charging officer's report and testimony is sufficient evidence to sustain the disciplinary conviction in this instance. *See Hudson*, 242 F.3d at 537 (finding that the offense report, standing alone, meets the "some evidence" standard).

Rice argues that Warden Cook's testimony conflicts with the written statement given by Officer Smith, who reportedly gave Rice permission to stand up and check the time. The statement given by Officer Smith, however, says nothing about authorizing Rice to leave the day room and linger in front of cell C9-24 where Rice was encountered by Warden Cook. Even assuming that the evidence was somewhat contradictory, the disciplinary hearing officer's determination is supported by the written report and testimony given by Warden Cook. A federal habeas corpus court may not weigh evidence when reviewing a prison disciplinary proceeding. *See Hill*, 472 U.S. at 455; *Hudson*, 242 F.3d at 537. A prison disciplinary conviction may be overturned only "where no evidence in the record supports the decision." *Broussard*, 253 F.3d at 877. Because there was some evidence to support the guilty finding, this Court must defer to the disciplinary hearing officer. *See Hudson*, 242 F.3d at 537. Based on this record, Rice has not demonstrated that he was denied due process or that the challenged disciplinary conviction fails for lack of sufficient evidence. Accordingly, the respondent is entitled to summary judgment and the petition must be dismissed.

### III.     CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right,"

but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Docket No. 12) is **GRANTED**.

2. The federal habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 30th day of September, 2011.

_____
Kenneth M. Hoyt
United States District Judge